## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

**CARL E. SMITH, INC.,**

**Case No. 03-22274**
**Chapter 11 Reorganization**

**Debtor-in-Possession.**
**(Substantively consolidated with**
**Carl E. Smith Real Estate, Inc.**
**Case No. 03-22298)**

## MEMORANDUM OPINION AND ORDER SUSTAINING
## THE DEBTOR'S OBJECTION TO THE CLAIM OF CENTRAL
## STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND

### I.  FACTUAL BACKGROUND

Carl E. Smith, Inc. ("CESI") filed a Chapter 11 Bankruptcy Petition in this Court on September 29, 2003.  CESI was engaged exclusively in the pipeline construction business in the eastern part of the United States.  CESI was a member of the Pipeline Contractors Association, and as such, entered into collective bargaining agreement with the International Brotherhood of Teamsters (the "Teamsters").  CESI and the Teamsters agreed to "accept and be bound by all terms and conditions of the National Pipeline Agreement between the International Brotherhood of Teamsters and the Pipeline Contractors Association operating in the United States".

CESI ceased business in December of 2003, and under authority of this Court's Order dated August 31, 2004, sold substantially all of its assets at an auction held on September 29 and 30, 2004.

CESI's main remaining asset is its ownership of the stock of Carl E. Smith Petroleum, Inc.[1] which owns approximately 168 oil and gas wells in West Virginia and Ohio.

According to the Affidavit of Eddie Burl Smith, an officer of CESI, while it was in business, all of CESI's employees, including those for whom pension contributions were made, were engaged in the pipeline construction business. The number of employees fluctuated between 100 and 750. During any construction project, CESI would engage workers from many unions, including the Teamsters, Welders, Laborers and Operators. The Teamsters in question were, as were CESI's other union employees, hired from local union halls near CESI's various construction sites throughout the eastern part of the United States so that the number and identity of the union employees changed from job to job. These were not permanent employees of CESI, and a Teamster employed on one job was not likely to be employed on another CESI job due to the geographical distance between jobs.

The Teamsters which were employed by CESI did not merely deliver equipment and parts to CESI's job sites. Rather, the Teamsters in question had multiple job duties, including, but not limited to, driving buses to carry workers to and from the job site and driving various vehicles, including buses, carryalls, skid trucks, winch trucks, fuel trucks, parts trucks, and dump trucks which hauled and dumped dirt on the job site.

Central States of Southeast and Southwest Areas Pension Fund (the "Fund") filed a Proof of Claim on November 14, 2003, which it amended by a filing made on February 9, 2004. The Fund

---

[1] Carl E. Smith Petroleum, Inc. had a separate payroll for approximately 44 employees, none of whom were working under a collective bargaining agreement so there were no pension fund payments with respect to Carl E. Smith Petroleum, Inc. employees.

asserts a contingent general unsecured claim in the amount of $95,510.22, for pension withdrawal liability.   Attached to the Amended Proof of Claim is the Fund's itemization of the total contributions, hours and contribution base units ("CBUs") reflected on the summary of Past Contributions for Employer Liabilities ("PCEL") for a ten year period immediately prior to the Debtor's withdrawal. The PCEL is a seven-page document and shows the year in which pension contributions were allegedly made by CESI. The PCEL also shows the local to which the employees belong for whom contributions were allegedly made and the type of contract.

For example, the first page of the PCEL shows Local Union No. 89, on a contract "A", for which contributions of $7,140.00 were made in 1994.  In 2002, contributions of $2,850.00 were made on contract "B".  No other contributions were ever made to members for Local Union No. 89. The PCEL shows ten different locals.  Local Nos. 7, 92, 100, 341, 449, 486, and 505 had contributions for a single year.  Local Nos. 89 and 697 had contributions for two years.  Local No. 327 had contributions under two different contracts for two years.  Local No. 637 had contributions for three years.

## II.  DISCUSSION

The question before the Court centers on the Building and Construction Industry exception to pension withdrawal liability as provided for in 29 U.S.C. § 1383(b).  The question is whether substantially all of the employees for CESI had an obligation to contribute to the pension fund performed work in the building and construction industry.

> [T]he issue here is whether substantially all of the employees for
> which [CESI] had an obligation to contribute had performed work in
> the building and construction industry. . . . If so, [CESI] did not
> completely withdraw as defined in Section 1383(b) and is not subject
> to withdrawal liability.  If the contrary is true, however, [CESI] fails

to come within the statutory exception and remains subject to
withdrawal liability.

Union Asphalts and Road Oils, Inc. v. MO-KAN Teamsters Pension Fund, 857 F.2d 1230, 1233 (8th
Cir. 1988) (brackets added; citations omitted).

It is undisputed that CESI was engaged only in the construction pipeline business. The
contract between CESI and the Teamsters acknowledges that the Teamsters understood that they
were being employed in the construction industry.

The Teamsters and the other Union employees were not permanent employees, but were hired
for a specific pipeline job from a local union hall. When the job was completed, the employment
ceased. As shown on the PCEL attached to the Fund's Proof of Claim, in most cases, once a job was
finished, CESI never again hired Teamsters from the same local Union hall.

The transient and fluctuating nature of CESI's pipeline construction business fits perfectly
within the rational for the withdrawal liability exception for companies engaged primarily in the
construction business.

> The building and construction industry was identified as one industry
> in which withdrawals typically do not adversely affect the plan unless
> the employer continues to do the same work in the same area. In this
> industry, work is generally on a project-by-project basis, and
> employers covered employment may fluctuate drastically, and when
> a project ends, an employer's workers will normally remain in the
> labor pool available for employment by other contributing employers.
> Because of these factors, Congress established special rules for the
> construction industry.
>
> . . .
>
> In the construction industry, the funding base of the plan is the
> construction projects in the areas covered by the collective bargaining
> agreements through which the plan is maintained. An individual
> employee will typically work for tens or even hundreds of different
> employers over his or her working carrier, and the volume of work of

4

a given employer will often fluctuate greatly from year to year. These normal events did not pose an undue threat to a plan as long as contributions were made for whatever work is done in the area.

Central States, SE and SW Areas Pension Fund v. Robinson Cartage Company, 55 F.3d 1318, 1323 (7th Cir. 1995), quoting, Advanced Notice of Proposed Rule Making, 47 Fed. Reg. 42588 (1982), and H. R. REP, No. 869, 96th Cong., 2d Sess., pt. 1, at 75 (1980).

Based upon the foregoing facts, CESI clearly fits within the construction industry exemption and has no pension withdrawal liability.

In support of its claim, the Fund's position is that if an individual Teamster employed by CESI was driving a truck and not actually constructing or building something that the employee was not engaged in the "building and construction industry" even though CESI was engaged solely in the pipeline construction industry. The Fund argues that because the Teamsters (the covered employees) were "merely hauling materials to the construction site", that they were not engaged in the building and construction industry, and therefore, CESI is not entitled to the exemption for pension withdrawal liability found in 29 U.S.C. § 1383(b).

Here, the Fund relies upon cases which hold that (i) a subcontractor trucking company making deliveries to a construction site is engaged in the trucking or transportation industry, and (ii) a company with contract steel hauling business separate from its construction business did not have substantially all of its employees engaged in the construction industry. Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund, 857 F.2d 1230 (8th Cir. 1988); Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Service, Inc., 375 F.Supp.2d 684 (N.D. Ill. 2005).

The present case can be distinguished because the Teamsters were directly employed by CESI, a company whose only business was in the building and construction industry.  Unlike <u>Union Asphalts</u> and <u>Waterland Trucking Services, Inc.</u>, <u>supra</u>, relied upon by the Fund, CESI did not have a separate trucking business, and the Teamsters employed by CESI were not employed to deliver products to another company's construction site.  In the present case, the Teamsters were hauling materials and workers within, to and from the construction site, which was the construction site of their employer, CESI.

The exemption is afforded when "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan <u>perform work in the</u> building and construction <u>industry</u>." 29 U.S.C. § 1383(b)(1)(A) (emphasis added). The statute does not focus on whether the individual employees perform tasks which are limited to actual building or construction. The statute covers the "industry" in which the employees "perform" work.  The statute does not say the employees must actually "construct or build."

The policy behind the statute centers upon the transient nature of the building and construction "industry" itself - not upon what each individual employee did on a particular day.  The policy rationale behind the building and construction industry exemption centers on the <u>industry</u>.

> The building and construction industry was identified as one <u>industry</u> in which withdrawals typically do not adversely affect the plan unless the employer continues to do the same work in the same area. In this <u>industry</u>, work is generally on a project-by-project basis, and employers covered employment may fluctuate drastically, and when a project ends, an employer's workers will normally remain in the labor pool available for employment by other contributing employers. Because of these factors, Congress established special rules for the construction <u>industry</u>.

6

Central States, SE and SW Areas Pension Fund v. Robinson Cartage Company, 55 F.3d 1318, 1323

(7th Cir. 1995) (emphasis added), quoting, Advanced Notice of Proposed Rule Making, 47 Fed. Reg.

42588 (1982).

There is nothing in the statute or the legislative history which would favor a policy of giving

a construction company a pension fund exemption for its Operators, Welders and Laborers, because

they actually build or construct something, but not for its Teamsters, because the Teamsters only

drive trucks. The statute does not discriminate based upon the differing job duties of employees as

determined by their Union affiliation when all of the employees worked for the same employer

engaged solely in the construction industry.

The PCEL attached to the Fund's Amended Proof of Claim shows that CESI hired Teamsters

from local union halls near the construction site on a temporary basis. For example, members of

Local 89 were hired for a short time in 1994 and 2002, but never again. Most of the local Unions

shown on the PCEL only show contributions for a single year. In other words, the Fund's Proof of

Claim admits that the present case fits within the rationale of the construction industry exemption

because the Teamsters were employed on a job-to-job fluctuating basis and were never permanent

employees of CESI.

**BASED UPON THE FOREGOING,** the Court holds that the Debtor, Carl E. Smith, Inc.,

is entitled to the construction industry exemption provided by 29 U.S.C. § 1383(b), and therefore,

it is **ORDERED** that the Debtor's Objection to the Claim of Central States of Southeast and

Southwest Areas Pension Fund for pension withdrawal liability is hereby **SUSTAINED,** and that

it is further **ORDERED** that in accordance with this Court's "Order Granting the Debtor's Motion

for an Expedited Decision Upon the Debtor's Objection to the Claim of Central States Pension Fund

and Authorizing Monthly Payments Pending Decision" entered on December 7, 2005, Central States,

Southeast and Southwest Areas Pension Fund shall return to the Debtor the monies of Carl E. Smith

Petroleum, Inc. which were paid by the Debtor to the Fund by monthly payments of $3,033.80 within

twenty (20) days after this Order becomes a final non-appealable Order.

Entered: __APR 10 2006__          _____
                                  Ronald G. Pearson, Judge